IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA

               vs.                CRIMINAL ACTION NO. 03-161

MATTHEW ALAN MANCUSO

_____

PROCEEDINGS

       Transcript of Sentencing Hearing, commencing on Thursday, February 5, 2004, United States District Court, Pittsburgh, Pennsylvania, before Honorable Terrence F. McVerry, U.S. District Judge.

APPEARANCES:

| | |
|---|---|
| For the Government: | TINA O. MILLER, Esquire<br>United States Attorney's Office<br>U.S. Courthouse<br>700 Grant Street, Suite 4000<br>Pittsburgh, Pennsylvania 15219 |
| For the Defendant: | STANLEY W. GREENFIELD, Esquire<br>Greenfield and Kraut<br>1040 Fifth Avenue<br>Pittsburgh, Pennsylvania 15219 |
| Reported by: | Virginia S. Pease<br>Official Court Reporter<br>6260 USPO & Courthouse<br>Pittsburgh, Pennsylvania 15219<br>412.208.7385 |

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

1    (In Open Court.)

2        THE COURT:  It is Thursday, February 5th, 2004, at

3    3:30 p.m., the date on which sentencing has been scheduled in

4    the case of United States of America versus Matthew Alan

5    Mancuso, at case No. 03-161.

6        Would counsel for the government and counsel for

7    Mr. Mancuso kindly enter your respective appearances on the

8    record.

9        MISS MILLER:  Tina Miller from the United States

10   Attorney's Office, representing the United States of America,

11   Your Honor.

12       MR. GREENFIELD:  Stanley W. Greenfield, as counsel

13   for Mr. Mancuso.

14       THE COURT:  Thank you.

15       Since the plea hearing in this Court on

16   September 25th, 2003, I note for the record the preparation of

17   the following by the Probation Office.  A pre-sentence report,

18   prepared on November 24th, 2003, and the addendum to the

19   pre-sentence investigation report on January 22nd, 2004.

20       We also have the filing of the following.  The

21   government's position with respect to sentencing factors that

22   was filed on December 8th, 2003, the defendant's objections to

23   the pre-sentence investigation report, and mitigation

24   statement that was filed on January 16th, 2004, the

25   government's response to the defendant's objections that was

1   filed on January 21st, 2004, and the tentative findings and

2   rulings by the Court filed on February 2nd, 2004.  Each and

3   every one of these documents have been filed under seal.

4          Have both the defendant, Matthew Alan Mancuso, and

5   his attorney, Stanley Greenfield, reviewed the documents to

6   which I've made reference?

7          MR. GREENFIELD:  We have, Your Honor.

8          THE COURT:  Has the United States also reviewed

9   these documents?

10          MISS MILLER:  Yes, Your Honor.

11          THE COURT:  Mr. Greenfield, would you kindly bring

12   your client forward to be sworn.

13      (Whereupon, defendant was duly sworn.)

14          THE COURT:  You are Matthew Alan Mancuso; are you

15   not?

16          THE DEFENDANT:  Yes.

17          THE COURT:  In a proceeding in this court on

18   September 25th, 2003, you pleaded guilty to Count 1 of a

19   two-count criminal indictment at No. 03-161, which charged you

20   with the sexual exploitation of a minor from in or around

21   November, 1998, until in or around July, 1999, in violation of

22   Title 18, United States Code, Section 2251(a).  Is that

23   correct?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Following your guilty plea, do you

1  recall having indicated your willingness to be interviewed by

2  the Probation Office, and have me review the pre-sentence

3  investigation report prior to determining your sentence?

4          THE DEFENDANT:  Yes.

5          THE COURT:  I have reviewed the compete file in this

6  case, the Probation Office's pre-sentence investigation

7  report, the addendum, you and your attorney's objections to

8  the pre-sentence report, the response of the United States

9  Attorney's Office to your objections, and the recommendation

10 of the Probation Office with regard to an appropriate

11 sentence.

12         I must advise you that according to a standing order

13 of the Board of Judges of this Court, it is not appropriate to

14 disclose the sentence recommendation of the Probation Office

15 to you, your attorney, or the government's counsel.  However,

16 in determining your sentence, the Court will not otherwise

17 consider any factual or legal matter that has not previously

18 been disclosed to you and your attorney.  Do you understand

19 that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Mr. Greenfield, having reviewed the

22 pre-sentence investigation report, the addendum and the

23 Court's tentative findings and rulings, and discussed them

24 with your client, are there any errors in these documents that

25 you've not already called to the Court's attention?

 1              MR. GREENFIELD:  There are none, Your Honor.

 2              THE COURT:  Mr. Mancuso, have you reviewed and

 3       discussed the presentence report, the addendum, and the

 4       Court's tentative findings and rulings with your counsel,

 5       Mr. Greenfield?

 6              THE DEFENDANT:  Yes, I have.

 7              THE COURT:  Is that correct, Mr. Greenfield?

 8              MR. GREENFIELD:  It is in fact, Your Honor.

 9              THE COURT:  Miss Miller, does the government have

10       any position that it would like to state with regard to the

11       Court's tentative findings and rulings?

12              MISS MILLER:  No, Your Honor.

13              THE COURT:  The Court, therefore, hereby adopts its

14       tentative findings and rulings, and the relevant findings in

15       the pre-sentence report and addendum that are applicable to

16       this sentence determination.

17              Mr. Greenfield, is there anything you would like to

18       say on behalf of your client at this time?

19              MR. GREENFIELD:  I should like to just merely

20       reference the remarks that were in writing with respect to the

21       statement filed by the defendant in connection with the

22       objections and in mitigation.  I won't belabor them now, and I

23       won't revisit them in open court in as explicit a way as I

24       presented them to the Court there in the written form.

25              I would merely ask the Court to keep in mind, as I

1   take it the Court will, the points that were made there, and

2   though they did not result in convincing the Court that there

3   should be an elimination of upward calculations that were the

4   basis of the objections, nevertheless, we respectfully suggest

5   they remain as points that should be considered in, if not in

6   mitigation, in the fullest sense in preserving a, a position

7   for the defendant within the scope of the guidelines already

8   now indicated by the pre-sentence report and his status as a

9   offender with a 34 rating under the guidelines.

10          Your Honor has a range within the guidelines, as the

11   guideline score indicating, as you know, between 151 and the

12   188, and I would respectfully suggest that the remarks made in

13   the mitigation claim in writing are appropriate for

14   consideration by the Court in connection with meting out a

15   sentence within the standard range, and certainly at the lower

16   end of it, as we perceive it.

17          Having said all that, there's really nothing more to

18   add at this point, Your Honor.

19          THE COURT:  I am mindful of the arguments that you

20   made and your objections to the pre-sentence investigation

21   report, and I've responded to them, as you're aware, and

22   adopted those tentative findings.

23          But that having been said, I remain mindful of your

24   arguments made there.

25          Mr. Mancuso, do you have anything additional that

1  you would like to say or present on your own behalf before

2  sentencing?

3  　　　　　THE DEFENDANT:  No, I don't.

4  　　　　　THE COURT:  Are you in any way dissatisfied with the

5  service, advise or representation provided by Mr. Greenfield

6  in this matter?

7  　　　　　THE DEFENDANT:  No, not at all.

8  　　　　　THE COURT:  Mr. Greenfield, is there any legal cause

9  or reason why sentence should not now be pronounced?

10  　　　　　MR. GREENFIELD:  None, Your Honor.

11  　　　　　THE COURT:  Miss Miller, does the government have

12  any position or statement that you would like to make

13  regarding sentence?

14  　　　　　MISS MILLER:  Yes, Your Honor.  And we also have a

15  letter from the child victim that her representative would

16  like to read.  And her representative would also like to

17  address the Court.

18  　　　　　With respect to the government's position, Your

19  Honor, it's our position, as we've said in our brief, a

20  sentence at the upper end of the guideline range is

21  appropriate in this case.  I think that is so because, first

22  of all, of the extent of the abuse that this child victim

23  suffered at the hands of Mr. Mancuso.  And I think it's also

24  because of the extent to which Mr. Mancuso went to gain access

25  to this child victim.  I think this was not a crime of

1    passion.  This was a cold, calculated crime that took a great

2    deal of planning.  For that reason, Your Honor, I think that a

3    sentence at the upper end of the guideline range is

4    appropriate.  Frankly, I wish, as the prosecutor, that I could

5    have thought of a way that I could have charged Mr. Mancuso

6    with crimes that would have put him in jail for the rest of

7    his life, because I think that this crime is one that is

8    deserving of such a sentence.  Unfortunately, that wasn't

9    anything that I was able to do in this case.

10          However, I think that 15 and a half years would be

11   an appropriate sentence for this Court to impose on

12   Mr. Mancuso.

13          THE COURT:  Pursuant to Federal Rule of Criminal

14   Procedure 32(i)(4), the Court is required, before imposing

15   sentence, to address any victim of a crime, or that victim's

16   legal representative, of any crime of violence or sexual abuse

17   who is present at the sentencing, and the Court is prepared to

18   hear from the legal guardian of the victim at this time.

19          (Whereupon, witness was duly sworn.)

20          MISS MILLER:  Your Honor, she would like to read a

21   letter that was written by the child victim in this case,

22   addressing her present circumstances.

23          THE COURT:  Is there any reason why the witness

24   should not be identified on the record, and her relationship

25   with the victim established prior to her testimony?

1          MISS MILLER:  I don't believe so, Your Honor.

2          THE COURT:  If there is, tell me.

3          MISS MILLER:  Do you have any objection to doing

4    that?

5          She has no objection to doing that, Your Honor.

6          THE COURT:  Okay.  Tell us your name, then.

7          THE WITNESS:  I'm Lynn Maria Ginn.

8          THE COURT:  Can you spell that, please?

9          THE WITNESS:  L–Y–N–N, Maria, M–A–R–I–A, Ginn,

10   G–I–N–N.

11          THE COURT:  And what is your relationship with the

12   child victim in this matter?

13          THE WITNESS:  Pre–adoptive parent.

14          THE COURT:  Pre–adoptive parent?

15          THE WITNESS:  Yes.

16          THE COURT:  Are you presently in a foster

17   relationship also?

18          THE WITNESS:  Yes, um–hum.

19          THE COURT:  So the child lives with you?

20          THE WITNESS:  Yes.

21          THE COURT:  Have you had an opportunity, either

22   today or prior to today, to talk to the Assistant United

23   States Attorney regarding your testimony here today?

24          THE WITNESS:  Yes.

25          THE COURT:  And so, you are aware, I presume, of

1   certain things that have been under seal during the course of

2   this entire matter, and that we, and that you cannot testify

3   to, such as the victim's identity and the like?  You're aware

4   of that?

5           THE WITNESS:  Yes.

6           THE COURT:  Okay.  Go ahead.

7           THE WITNESS:  This says, Dear Mummsy, I just want to

8   say thank you for being so nice to me.  You, you've helped me

9   through so much already.  I finally have a mom, one that

10  really loves me, too.  I love it.

11          I love it in church.  And my live is easy now that I

12  have God.  Thank you for being such a caring mother.  And some

13  times have been hard, but you have been there.  Sometimes I

14  thought that I was confused, but you helped me.

15          Thank you for my birthday party.  Thank you for

16  loving me.  Thank you for being there for me.  I love you so

17  much.

18          And then, it says, mum, you are nice.  I mean, I

19  just love you.  I love you, especially sweet.

20          MISS MILLER:  Your Honor, may we approach briefly at

21  sidebar?

22          THE COURT:  Yes.

23          MR. GREENFIELD:  The defendant also approach, Your

24  Honor?

25      (Sidebar conference was held on the record:

1              MISS MILLER:  Your Honor, thank you for indulging

2      us.  Miss Ginn wanted to make a statement to the Court

3      concerning the circumstances under which Marsha was brought to

4      her home and the condition that she was in when she got there.

5      I thought that might be best to do at sidebar, because it

6      would certainly disclose the nature of the relationship

7      between Marsha and Mr. Mancuso.

8              So with the Court's indulgence, Miss Ginn wanted to

9      address the Court.

10             MR. GREENFIELD:  All right.

11             THE COURT:  Okay, yes.

12             THE WITNESS:  I just wanted to say that when Marsha

13     came to me, she -- I mean, I was afraid to even hug her or

14     anything.  She was very mal-nourished.  Her hair was fragile.

15     She didn't eat hardly anything.  I asked her what some of the

16     things --

17             MR. KAUFMAN:  (From the audience) Your Honor, I'm

18     sorry, but the gallery can hear everything.

19             THE COURT:  Keep your voice down.

20             THE WITNESS:  In other words, she just is

21     experiencing an eating disorder.  She didn't eat a lot of

22     food.  She didn't drink milk.  I asked her some of the things

23     that they ate at home.  She said basically her dad fed her

24     spaghetti with no sauce, just plain noodles.  Everything was

25     bland.  Plain, raw vegetables.

1          She was 15 pounds underweight when she came with me.

2     She has gained seven, almost seven pounds now.  She is happier

3     now.  She has nightmares about some of the things that

4     happened to her.  She has a hard time sleeping.  Sometimes I

5     have to go and lay with her, talk her through it.

6          Just, I mean, there's so many things that she's

7     going through.  And I brought even some before and after

8     pictures of her.  This is her when she came to me, these two.

9     This is her now.  She looks so much better.  She's a lot

10    happier.  I mean, she's really gone through a lot.  This has

11    been very traumatic for her.

12         MISS MILLER:  Is there anything else you wanted to

13    say to the Court?

14         Okay.  Thank you, Your Honor.

15         MR. GREENFIELD:  Your Honor, I want you — I want

16    the response of Mr. Mancuso.

17         THE DEFENDANT:  Just to respond about she has an

18    eating disorder.  Marsha never had an eating disorder.  She

19    came from an orphanage, where they fed her rarely anything.

20    In fact, when I went to adopt her, she took me outside one day

21    and showed me a bush she would eat green berries from.  That's

22    how the kids were fed when they were starving.  They didn't

23    have any food for them, literally, to feed them in the

24    orphanage.  They fed them rice, and bread, and soup.  She had

25    a very limited diet.

1    When Marsha came to me, she wouldn't eat anything.

2  I tried to get her to eat noodles with sauce, pizza, and

3  chicken.  She wouldn't eat any of it.  She wouldn't drink

4  milk.  Rather than force her to do that, I often let me (sic)

5  decide what her diet should be.  I was her responsible parent

6  in that regard.  I fed her daily.  I provided for her.  She

7  ate raw vegetables.  There's nothing wrong with that.  She ate

8  noodles.  She ate good food.

9    I restricted her diet only in the sense, I didn't

10  let her eat junk food.  And she was underweight because that's

11  the way she was.  She was a small child.  She was a premature

12  baby.  She was born 2.2 pounds, so she was naturally small for

13  her age.  That's all can I say.  I did not mistreat her, as

14  far as her diet is concerned, whatsoever.

15    MR. GREENFIELD:  How about her eye?

16    THE DEFENDANT:  Her eye problem, she has turned eye.

17  When I first brought her here, I took her to the dentist to

18  have her teeth taken care of.  I took her to the optometrist

19  to have her eyes examined.  I had two doctors look at her, and

20  they both recommended they not do surgery on her at the time

21  because it would have been too traumatic for her, just coming

22  to the United States.  They both told me that correcting her

23  eyes would not improve her vision, would only be cosmetic.

24    At that time, Marsha had some very traumatic

25  experiences in Russia in the hospital.  She was traumatized by

1    her parents.  She was put in the hospital.  She had an
2    extremely bad scar on her neck from, what I understand, was
3    her mother tried to kill her, I think, with a knife.  So she
4    was very afraid of hospitals and doctors.
5            When I took her to get her immunization shots when I
6    first brought her here, it took two of us to hold her down to
7    get shots in her arm.  That's how scared she was, coming to a
8    doctor.  So it was my decision to just wait until she got a
9    little bit older, so she could be a part of the decision to
10   correct her eye.  And probably now is a good time to do that,
11   when she's older and she understands what's going on.  When
12   she came to this country, she couldn't speak any English, she
13   spoke only Russian, and it just wasn't the right thing to do
14   at that time.
15           THE COURT:  With whom does Marsha live, besides you?
16           THE DEFENDANT:  Just myself.
17           THE COURT:  Okay.  I didn't know if you had other
18   children.
19           THE WITNESS:  Can I say one other thing?
20           THE COURT:  Yes.
21           THE WITNESS:  I also say that Marsha, since she came
22   to live with me, she's been eating a lot of different foods.
23   She started drinking milk within two months, immediately
24   started eating hamburgers, chicken.  Three weeks ago she was
25   eating pizza, spaghetti with sauce.  I mean, she's made

 1  tremendous progress.  I mean, she had stated to me that she

 2  was forced to stick to a strict diet, and her doctor diagnosed

 3  her with an eating disorder.

 4          THE DEFENDANT:  That's not true.

 5          THE WITNESS:  I'm just very concerned about her.

 6  And now she is, right now she's very traumatized.

 7          THE DEFENDANT:  That's not true.  Marsha stayed with

 8  my family, mother and sister, overnights.  Why would anyone

 9  try to keep food from a child?  I mean, that doesn't make any

10  sense at all.

11          She chose not to eat these foods.  And my mother is

12  an Italian woman.  She wants everybody to eat everything that

13  they can, and she couldn't get food into Marsha either.  There

14  was no food ever withheld from Marsha at any time.

15          THE COURT:  All right.  Thank you.

16          MISS MILLER:  Thank you, Your Honor.

17     (Whereupon, sidebar conference concluded.)

18          THE COURT:  Due to the sensitive nature of some of

19  the matters that were just placed on the record, that was done

20  at sidebar, as compared to in open court.  The Court

21  determined, on the other hand, however, that it didn't require

22  to be in camera and outside of this room.  So, to the extent

23  that it was overheard, I apologize.

24          Mr. Mancuso, United States Sentencing Guidelines

25  total offense level in this matter was originally at 27, but

1    it was enhanced by six levels based on specific offense

2    characteristics, pursuant to Sentencing Guideline

3    Section 2G2.1(b)(1)(A) and 2G2.1(b)(2).

4            It was also enhanced, as you know, an additional

5    four levels, based on victim-related adjustments, pursuant to

6    Sentencing Guideline Section 3A1.1(b)(1) and 3A1.3(2), and

7    Sentencing Guideline 3A1.1(b)(1), which resulted in an

8    adjusted offense level of 37.

9            This adjusted level was reduced by three for

10   adjustment for acceptance of responsibility, which resulted in

11   a total offense level of 34.  That places you in a criminal

12   history category, you are in a criminal history category of

13   one, having no prior criminal record, and you are in Zone D in

14   the Sentencing Guidelines as far as potential sentence is

15   concerned.

16           Under the guidelines, you are well aware, through

17   counsel and through arguments by the government, that you

18   could be imprisoned for a period from 151 to 188 months.  You

19   are not eligible for parole.  You are, if imprisoned, subject

20   to supervised release of two to three years.  You could be

21   fined anywhere from 17,500 to $175,000.  Restitution is

22   mandatory in this case.  And a special assessment of $100 is

23   something to which you are subject.

24           Pursuant to the Sentencing Reform Act of 1984, it is

25   the judgment of the Court that you, Matthew Alan Mancuso, are

hereby committed to the custody of the Bureau of Prisons, to be imprisoned for a term of 188 months.  The Court recommends that the Bureau of Prisons designate an institution wherein you may participate in a treatment program for sex offenders.

Upon completion of your term of imprisonment, you shall be placed on supervised release for a period of three years.  Within 72 hours of your release from the custody of the Bureau of Prisons, you shall report in person to the Probation Office in the District to which you are released.

While on supervised release you shall not commit another federal, state, or local crime, and you shall comply with the standard conditions that have been recommended by the Sentencing Commission and adopted by this Court.

You must comply with the following conditions:

You shall not illegally possess a controlled substance.

You shall not possess a firearm or destructive device of any kind.

You shall participate in a mental health treatment program and/or sex offender treatment program, as approved and directed by the Probation Office.

You shall abide by all program rules, requirements, and conditions of the sex offender treatment program, including submission to polygraph testing to determine if you are in compliance with the conditions of release.

1        You shall not associate with children under the age

2   of 18, except in the presence of a responsible adult who is

3   aware of the nature of your background and current offense,

4   and who has been approved by the Probation Office.

5        In accordance with Title 18, United States Code,

6   Sections 3583 and 4042, you shall report the address where you

7   will reside, and any subsequent change of address, to the

8   Probation Office responsible for your supervision.

9        And further, you shall register as a convicted sex

10  offender in any state where you reside, are employed, or carry

11  on a vocation or are a student.

12       You shall not possess any materials, including

13  pictures, photographs, books, writings, drawings, videos or

14  video games depicting and/or describing child pornography, as

15  that term is defined in 18 United States Code,

16  Section 2256(8).

17       You are prohibited from operating or accessing

18  Internet websites containing child pornographic materials.

19  You shall use only those computers and computer-related

20  devices, screen user names, passwords, e-mail accounts, and

21  Internet service providers as approved by the Probation

22  Office.  Computers and computer-related devices include, but

23  are not limited to, personal computers, personal data

24  assistance, Internet appliances, electronic games, and

25  cellular telephones, as well as their peripheral equipment

1    that can access, or can be modified to access, the Internet,

2    electronic bulletin boards, other computers or similar media.

3            You shall cooperate in the collection of DNA as

4    directed by the Probation Office.

5            The periodic drug testing mandated by the Violent

6    Crime Control and Law Enforcement Act of 1994 is hereby

7    suspended.  The Court finds that this offense is not drug

8    related, and that you have no current or past history of

9    substance abuse.

10           A mandatory special assessment of $100 is imposed,

11   pursuant to Title 18, United States Code, Section 3013, which

12   shall be paid to the United States District Court Clerk

13   forthwith.

14           Restitution in this matter is mandatory, pursuant to

15   Title 18, United States Code, Sections 2259(a) through 3663,

16   3663(a) and 3664.  In order to meet your restitution

17   obligation, the Court has the understanding that you have

18   fully funded a trust account in the amount of $200,000 for the

19   benefit of the child victim in this case.

20           Miss Miller, has the trust been fully funded through

21   escrow funds —

22           MISS MILLER:  Yes, Your Honor.

23           THE COURT:  — at this time?

24           MISS MILLER:  Yes, Your Honor.

25           THE COURT:  That is accomplished.  That has been

1   accomplished?

2          MISS MILLER:  That has been accomplished, Your

3   Honor.

4          THE COURT:  Based on the financial information,

5   then, contained in the presentence investigation report, as

6   well as the full funding of a trust fund, the Court finds that

7   you do not have the ability to pay a fine.  Therefore, the

8   Court will waive any fine in this matter.

9          Mr. Mancuso, you're actions are reprehensible, to

10  say the least.  Although there is no presently determinable

11  monetary loss in this case, the damage you've done in scarring

12  this young victim's psyche for life cannot really be measured.

13         While you're establishment of a trust fund for the

14  victim is commendable, this in no manner excuses or diminishes

15  your criminal conduct in this matter whatsoever.  This

16  sentence as imposed adequately conforms with the statutory and

17  sentencing guideline requirements.

18         This sentence is based on the need to reflect the

19  seriousness of the offense, to promote respect for the law,

20  and to provide just punishment for the offense.

21         Mr. Mancuso, except as you may have previously

22  waived rights in your plea agreement, you have the right to

23  appeal from the orders of this Court, the judgment of guilt,

24  and/or the sentence imposed today.

25         Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  You have the right to have a lawyer

3    represent you on appeal, and if you cannot afford a lawyer,

4    one will be appointed for you at no cost to yourself.

5          Do you understand that?

6          THE DEFENDANT:  Yes, I do.

7          THE COURT:  If you cannot afford certified copies of

8    the necessary court records and transcripts, they will

9    likewise be furnished to you at the expense of the United

10   States Government.

11         You understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Finally, you must know that if you were

14   to appeal, you must do so, that is, appeal, within ten days

15   from today.  If you do not appeal within ten days of today,

16   you will lose your right to appeal.

17         You understand that?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  If you request, the Clerk of Court will

20   immediately prepare and file a notice of appeal on your

21   behalf.

22         Do you want the Clerk of Court to prepare and file a

23   notice of appeal for you?

24         THE DEFENDANT:  Not at this time.

25         THE COURT:  Are there any other matters for

1  consideration before this sentencing hearing is concluded?

2          MISS MILLER:  Yes, Your Honor.  The government

3  would, first of all, move to seal that portion of the record

4  of today's proceedings that were conducted at sidebar, and we

5  would also move to dismiss Count 2 of the indictment.

6          THE COURT:  Government's motion, without objection,

7  is granted.  The proceedings at sidebar will be sealed.  And

8  Count 2 of the indictment -- is it Count 2 of the indictment?

9          MISS MILLER:  I believe so, Your Honor.

10         MR. GREENFIELD:  Yes, Your Honor.

11         THE COURT:  Count 2 of the indictment will be

12  dismissed.

13         Is it the government's motion to continue the

14  matters that heretofore have been filed under seal, to remain

15  under seal?

16         MISS MILLER:  Yes, Your Honor.

17         MR. GREENFIELD:  Yes.

18         THE COURT:  Nothing further to come before this

19  Court, this sentencing hearing is concluded, and Court is

20  adjourned.

21      (Court recesses.)

22                      * * * * *

23

24

25

I certify by my original signature herein that the forgoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/Virginia S. Pease
Official Court Reporter